The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Please be seated. We're now ready to hear argument in our next case, United States v. Whyte. Mrs. Mundy. Good morning. May it please the Court, I'm Monica Mundy, and I represent William Whyte. We have raised several issues on appeal, but I would like to devote my argument to focusing on the first one, which deals with issue preclusion. This might seem to be only slightly more interesting than insurance coverage, but in truth, this is a fascinating issue, and we'll rely on first impression, and the issue before the Court is whether, in a non-intervened KETAM case, the jury's finding that there was no fraud has preclusive effect in a subsequent criminal trial for fraud for the very same issues. Now, I think the Court is familiar with the background, so I'd like to jump to what I think is the biggest issue that the government has posed, or at least one of the biggest issues, which is you can't have this preclusion in a criminal case after a civil case. This argument is contrary to both the law from this circuit and from the United States Supreme Court. Both courts have held that issue preclusion may be available when the first proceeding is civil and the second proceeding is criminal. This Court stated that in United States v. Mumford, a 1980 case, and stated, unlike race judicata, the doctrine of collateral estoppel may be applicable when the first cause of action is civil and the second is criminal. Similarly, the United States Supreme Court, in the Yates decision, said exactly the same thing. We also know that there is a case where at least one court has applied this particular doctrine, issue preclusion, in a criminal case following a civil case, and that is the case United States v. Rogers. It's 960 F. 2nd at 150. Was that a case where the United States was actually a party in the civil litigation? In that particular action, Your Honor, it was the SEC. Okay. And so the first action, and this arose from a fraudulent scheme involving tax shelters over mining, gold mining. And so the first action was an SEC action basically for securities fraud. And the defendant... So the United States was a party. Correct. Correct, Your Honor. And at least that's what the Tenth Circuit held. Then there was a later criminal proceeding brought by the United States for a host of criminal issues, such as mail fraud, RICO, securities violations, and obstruction of justice. And the Tenth Circuit in that case applied issue preclusion to preclude the re-litigation not of every single client... Well, I don't know that... Well, I'm not going to speak for my colleagues, but I don't know that I would find that uncontroversial in this case if the United States had actually intervened in this lawsuit. But it didn't. So that's the question, right? Correct. So what you're suggesting is the United States in each and every case is going to have to make a considered judgment as to whether or not it should intervene on the fear that if it doesn't, it's going to be barred or precluded from a later criminal prosecution. And what's your best case for that proposition? Your Honor, I think it's the Eisenstein case itself. In Eisenstein, the Supreme Court of the United States noted that the United States is bound by a judgment in all FCA cases regardless of its participation in the case or its intervention. That's at page 936. Now, this was a notation that the court made in the body of the opinion. I'll also point out that the Fifth Circuit... Can I go back to the Eisenstein case? Yes, sure. So I did look at that line, and I sort of, I agree it's not entirely clear, I guess, but I had read it to mean that they would claim preclusion would apply, that the government doesn't intervene, it still can't go ahead and bring its own FCA case, it can't bring a direct fraud civil action after the relator fails. But you read it more broadly to be saying that they're going to be bound in their prosecutorial decisions as well? Correct, Your Honor, and that's because the, in Eisenstein, the court actually cited to the Taylor versus Sturgill case, which is the case that deals with issue preclusion, and identified five So you read Taylor as being limited to issue preclusion, it's not about claim preclusion more generally, because I read it as being about preclusion more generally. I think it does apply to issue preclusion as well, Your Honor. Well, I agree it applies to both, but it also applies to claim preclusion, so why does Eisenstein's citation to Taylor tell us which kind of preclusion Eisenstein is talking about? Well, I don't know that that's as relevant as actually what Taylor says. And so what Taylor says is that there are certain instances when a party will be bound under issue preclusion, even if it wasn't an actual party to the action. So it's non-mutual issue preclusion. And the one that is relevant, or we think most relevant here, is that the government and the relator have a special legal relationship that is recognized by the False Claim Act itself, and that is of Asinor and Asinie. And again, this court and the United States Supreme Court have held that in a False Claims Act case, the relationship between the relator and the United States is one of Asinor and Asinie. And that's the U.S. X. Rel. Bunk v. Goslin Worldwide Moving Case, which is a Fourth Circuit case. And for the United States Supreme Court, the Vermont Agency v. U.S. X. Rel. Stevens case. Now, but the Supreme Court had all that before it in Eisenstein, and specifically found, notwithstanding the fact that the False Claims Act has all these extra add-ons that the government gets that you would not ordinarily receive as a entity that was not a party to a case, that that didn't make any difference. That based on the way Congress had written the statute, that they meant what they said. And if you didn't intervene, you were not a party. You were simply a party in interest, and you weren't bound by the acts of the relator because you had not intervened. Why is this case any different than Eisenstein? Well, Your Honor, we read Eisenstein much more narrowly than that. And the court several times carefully circumscribed its opinion to say not that the government is not a party for all purposes in a non-intervened case, but rather the issue in that case was, was the United States a party for purposes of federal rule of appellate procedure for dealing with whether it was going to be a 30-day notice of appeal period or a 60-day? In other words, was the government a party for purposes of the rule of notice of appeal? Are you arguing that the government is a party in this case for purposes of preclusion? What we're arguing, Your Honor, is that we think that given the relationship that it is, but the court doesn't need to reach that because even if it wasn't a party, it is still bound by issue preclusion because of the asinor-asini relationship, the legal relationship between the government and the relator. I'm just going to give you a chance to respond to what the government says in its brief, which is that the asinor-asini relationship has to do with civil recovery. You are precluded from going after that same recovery by that same method. You can't bring another FCA or direct FCA case, but it has nothing to do with issue preclusion and a different cause of action. Do you think they're reading that law incorrectly? Absolutely, Your Honor. I think that that is, that's an absolutely inconsistent reading given the nature of the False Claim Act and the law that we've cited. In Taylor, the court was clear, and this court and the United States Supreme Court have been very clear in stating that the relationship between the relator and the United States is one of asinor-asini, and that is one of the six exceptions that is recognized. And as Judge Agee pointed out, that there are lots of add-ons. There are lots of reasons why this is true. The government It's a problem I have that the concept of asinor-asini is completely foreign to a criminal prosecution. I don't see how those two connect. Correct, Your Honor. And I think that the government is conflating that issue into the criminal case. That's not the issue in the criminal case. The issue of the relationship, because the question that we're asking is, was the government either a party or should it still be bound because of the relationship that it had in the first proceeding? So that issue is only related to the first proceeding. And the relationship between the United States and the relator in that first proceeding is a substantive legal relationship recognized by the False Claims Act and by this court and the United States Supreme Court as one of asinor-asini. And they are. They share in the same recovery. In fact, the ketam language itself means he who brings the action for the king and for himself. And so it goes to the very heart of the relationship. Even in a non-intervened case, the United States still has a huge amount of control and power over the case. It can force a voluntary dismissal of the case over the relator's suggestion. But those are all statutory additions that the Congress made. How does that affect whether or not the United States is a party in this and the later criminal case? And Your Honor, our position is that they don't have to be a party to the action. That Taylor v. Sturgill recognizes that you can have non-party preclusion if you fall within one of those categories. And that's exactly what we have here. In the first action, what the government assigned to the relator by not intervening was the right to bring that action and take the lead in the litigation on itself and share in part of the recovery. Now, the government does have an important question on intervention to make in every one of these cases. Not just because of collateral estoppel. Not just because of whether it has a right to appeal. It must make that important decision because it can have preclusive effect. We know that it can have preclusive effect because if the issues are going to be the same. And here, the government had the right to kick the case completely. It could have tried the criminal case first. There's even a statutory mechanism whereby the government could have asked for a stay of the key TAM case in order to advance the criminal case. It had so much control over it. And that's by virtue of that unique relationship between the relator and the United States. And so, really, this is a very rare and unique situation. It's a very rare situation. But why should the government, though, be in the position of having to make a decision on a criminal case in a civil matter that comes first? Because it's going back to Judge Diaz's initial question. It seems like the bottom line of your position would be that if the government determines in any of these cases under the False Claims Act that it's not going to intervene, that it's not going to be a party, then then as a matter of law, whatever transpires in that False Claims Act proceeding is going to be potentially applicable as a stopple, in effect, to them in a later criminal proceeding. That's the bottom line of which of your arguments. Is that right? Correct, Your Honor. And I think it goes maybe two answers. One is because it is their rights that are being vindicated in the False Claims Act case. They get at least 70% of any recovery in that case. So they should be very interested in that. But there are no, on behalf of the government, there are no criminal rights being vindicated in. This is a civil action. Correct. And the government, the indictment in this case came before the False Claims Act case was even filed. It did in this case. But, you know, we have to be concerned with the sort of the full sweep of cases. And there are going to be a lot of cases where the government won't know on their relator's preferred schedule what it's, whether a criminal prosecution is warranted, right? Well, that's correct, Your Honor. That might be the case. But I think that the government has 60 days under the statute to make a decision about intervention. And in many, many cases, at least ones we've been involved in, and in this case, they request extensions so that it can further consider whether to intervene. It's a very important issue. But under Eisenstein, we believe that the government is bound by that judgment and the findings in that judgment, whether they intervene or not. But it is a very important decision. And at least in this case that is before the court, the government issued the indictment before. It's a lengthy indictment. It's the same issues that were in the False Claims Act case. And if the government was really concerned about the preclusive effect, because we know the Fourth Circuit has said it's possible, you can have preclusive effect of a civil finding in a subsequent criminal proceeding, then the government had all of these tools at its disposal. It could have had the False Claims Act case dismissed. It could have asked for it to be stayed. It could have settled it, even without the relator's consent. So it had a variety of tools available to protect its interests. And that's really the focus is, well, we have this important interest in criminal prosecution, no question about it. It had all of the tools and it had all of the knowledge in this case to do it. And instead... Do you think Congress, well, to the extent that there's any indication in the record, otherwise legislative history or otherwise, that Congress intended this to be the trade-off that you're suggesting by passing the QETAM statute? I'm sorry, Your Honor, trade-off on... That the government would forego a criminal prosecution if, in fact, it did nothing and let the QETAM action proceed. I don't think that that was Congress's intention, Your Honor. And I also don't think that that's the result. Clearly, we're not going to have some type of claim preclusion on a criminal prosecution. We're talking about isolated issues. It's only issues. And the government knows what the issues are because it issued the indictment and because it had access to the complaint and had an opportunity to intervene. Well, let me ask you about that, I guess, but you might have a better way. So even if you're correct, that there is some preclusive effect here, is it your position that it entirely bars the prosecution or are there claims or charges that still survive? Let me say, conceptually, no, but in practice, yes, in this case. And I can either answer that. I have to go into a little bit of detail on that right now. So I can either reserve that or address that right now, Your Honor. I'm happy to do, since my light is flashing, either one. The issues are the same in the case. And so, for example, in the Rogers case that I discussed, in that case, there were multiple criminal convictions, but the previous civil adjudication, there was only one finding that was precluded. So the court actually reversed and set aside only one of the particular crimes. And so it doesn't, conceptually, it only bars certain things. So it doesn't actually impair the government's ability to bring or prosecute a case. It just means that the government is going to be bound by an earlier finding on which it had a full and fair opportunity to litigate. And I can go into detail on the issues on rebuttal. I'll let you do that on rebuttal. Okay, thank you. Mr. Smith. Thank you, Your Honor, and may it please the Court. The defendant's conviction should be confirmed. Your Honor, the defendant's position is inconsistent with Congress's intent in the False Claims Act. It's inconsistent with the common law, and it's inconsistent with the government's sovereign responsibility and power to enforce the criminal law. And as the Court suggested, it's a very broad rule. What the defendant is suggesting is that any issue that is litigated by a relator could be binding against the government in any future case. So, for example, and it is simply not the case that the government can foresee even every issue that would be litigated in a particular ketam action, much less every issue that might be relevant in a future criminal prosecution. But what about this case? It is sort of, maybe this case is unusual, maybe not. But in this case, the defendant was already indicted. The government knew exactly what it wanted to try the defendant for, and then it gets this ketam complaint, and it's the same stuff. So why didn't the government either intervene or get a stay or do something to protect its indictment? Well, so, I think it's important to note that the rule that they're suggesting would be much broader than... I know, but I'm just curious as to what happened in this case. So in this case, the government did elect not to intervene. And I don't think the record reflects the government's thought process, but I think the, but what I can say is... But wasn't there some suggestion in the record that the government wanted to see how these issues would play out in the civil trial? I don't think that that is... It's in the record in that it's in a document in the record. I don't think it's in a document that is actually in any admissible form. I think that's in a letter that Mr. Skinner wrote afterwards in which he was trying... Well, I'm not being critical. I think it makes, I mean, it's a tactical matter. Oh, I see what you're saying. It makes sense that the government would like to see how things play out. But that suggests that why should the government get two bites of the apple, particularly in this case where you had the indictment in place? Well, again, I don't think that was the reason. I think the reason was that the government... So the False Claims Act ketone provisions exist in order to essentially multiply the government's resources in terms of getting recovery for certain civil claims. And because the government has to allocate its resources, its very limited resources wisely. And in this case, there's really no reason to believe that the government would be able to recover a judgment from Armet or from Mr. White. And so it was not necessarily viewed as a good use of the government's resources. Well, why didn't it move for a stay then? I mean, the statute specifically contemplates that in order to protect a criminal investigation or charge, you can stay a ketone proceeding. So the stay provisions allow the government to seek a stay if the ketone is in interference with the investigation. That was not really the case here. In this case, the government had already basically completed its investigation, gone to the grand jury, gotten its indictment. And so at that point... It says that if you're pursuing a criminal investigation or proceedings, I mean, weren't you pursuing criminal proceedings here? Oh, yes. Yes, I'm not. What I'm saying is that they weren't interfering, that their provision wasn't interfering with our investigation. We had already... Do you think you could not have gotten a stay? I don't know whether we could have gotten a stay or not. I don't... The judge does not have to grant a stay. Mr. White did ask for a stay, I believe, and the judge did not give him a stay. Well, in your position, it doesn't matter. We don't... The government doesn't have to do this. Oh, absolutely. Absolutely. I was trying to answer the question as to what happened in this case. But I absolutely believe that Congress did not want... Congress wanted the government to have the free choice as to whether to become a party and take on the burdens and the benefits of being a party, or to not do that. And Congress didn't want that choice to necessarily be burdened by the forfeiture of our sovereign criminal obligations in other areas. Similarly, I think Congress did not want the government to be moving for a stay in every case. Congress wanted the relators to be able to bring the Congress wanted the relator to be able to take that upon himself and do that. And so, again, what the plaintiffs are asking for is inconsistent with what Congress wanted to do in the FCA. And it's important in this case because this is not a constitutional claim. Normally in criminal cases when we're talking about preclusion, we're talking about the double jeopardy clause. But as this court has already held, double jeopardy does not apply here. So there's no constitutional claim. It's simply the statute and the common law. In this case, as I understand opposing counsel's argument, she doesn't really address the district court's reasoning, which was based on the field factor in terms of are you a party, are you not a party, do you have the opportunity to litigate? She goes to a separate classification on asinor and asignee and says that controls the preclusion issue. What's your view of that? So, yes, Your Honor. So the government could be seen as an asinor and the relator as an asignee. And in Taylor v. Sturgill, the Supreme Court discusses, which just to answer Judge Harris' question before, Taylor v. Sturgill is about both claim and issue preclusion. It's primarily, while the discussion that we cite is about both claim and issue preclusion, the case itself is primarily about claim preclusion. So one of the exceptions to the strong rule against non-party preclusion is what's sometimes called the privity, but it applies to asignees. As the Supreme Court says in Taylor, this is a property-based rule. Basically, the idea is that once the claim is litigated, the property that was the claim becomes a judgment. And so the property is transformed and that is binding on anyone who has a property interest in that property. And does that theory in essence make the asinor-asignee distinction one limited to civil law designations? So it's limited to claim preclusion. And the way that we know that is, in addition to the Supreme Court's reference of property law, they also, it's also based, their discussion is based almost entirely on the second restatement of judgments. And when you go to the sections that they read, that they suggest, including Chapter 55, it says explicitly that this does not apply to issue preclusion, that this is a claims preclusion rule. There's two exceptions where they say issue preclusion would apply, but neither of them applies here. And both of them are really just a way to another type of exception. For example, if there's a different relationship other than asignee, asinor. But in any case Is your argument, then, that if that only goes to claim preclusion, that limits it to the civil side because there is no, in effect, corresponding claim on the criminal side? Yes. So, yes. So both of those are correct. First What about, what about the claim of restitution? Wouldn't that be analogous to sort of a civil claim? I'm sorry, the claim of, the civil claim? In a criminal prosecution. No, I don't think so. I mean, the restitution is a remedy rather than a criminal charge. So there's nine counts in this case. And restitution isn't, in civil law, restitution can sometimes be a cause of action, but that's not true in the criminal case. It's a, it's a remedy. But if I, if I could answer Judge Agye's question. So first, it's important to note that it only applies to claim preclusion, the asignee exception in Taylor. It only applies to claim preclusion, not, not issue preclusion. And as this court has suggested, there's no claim preclusion from civil to criminal law. I also would like to point out that claim preclude, that for asignee based preclusion, the scope of the preclusion is limited to the scope of the assignment. And so here it's quite clear, and case law makes this clear, that the relator is assigned no more than a partial assignment of the government's FCA claim. And so it's, the relator is clearly not assigned with the authority to bind the United States in criminal cases. And I would point to, they pointed to Rogers, but that case is not on point because the government wasn't, in fact, a party. But I would point also to the Ninth Circuit case in Hickey, which, in which the court found that even the Securities and Exchange Commission was not the same party because it was not acting as the federal sovereign vindicating the criminal law of the United States. And if the SEC was not the same party, then clearly a private party is not, is not the same party as the United States vindicating its, its sovereign interests. What do you think Eisenstein means when it says that even if the government doesn't intervene, it's going to be bound by the judgment? I think that it means that the, that it's talking about claim preclusion there, Your Honor. So what was, I'm sorry, so that would mean the government can't bring a sort of, I think it's called a direct FCA action? Yes. Yes. The, the government, right, the government gets, right, that's, that's exactly what it means. Once the relator as, as a signee has litigated the claim, that is binding on the government as a signer. So I also point out Eisenstein, counsel suggested that Eisenstein couches its language in some specific, something specific to rule four. And while it, of course, mentions that as a holding, the language and the reasoning of Eisenstein is much broader than that. And on page 933, for example, it says, the United States therefore is a party to a privately filed FCA action only if it intervenes in accordance with the procedures established by federal law. And that, that paragraph and the following paragraph describe all the reasoning for why the United States is not a party to a non, sorry, a non-intervened FCA action. And none of that reasoning is specific to the federal rules of appellate procedure. And so I, I'd also like to address just briefly the, the tools that the government has. While the government has broad tools in some respect to take over the case, for example, the government's tools are quite blunt. The government can take over the entire case with all of the benefits and burdens, including all of the costs associated. But it doesn't have the In other words, it has the, the option to make the decision on the claim, but not on the issues. The government doesn't, if the government declines to intervene, the government doesn't have any role in choosing witnesses, in questioning witnesses, in putting on evidence, in making arguments before the district court, and thus just doesn't have a, a role in litigating individual issues. If the court has no further questions, I'm sorry. I know you have an alternative argument also that even assuming issue preclusion principles applied here, they wouldn't bar this prosecution because the issues weren't necessarily and actually litigated in the FCA action. Is that right? Yes, Your Honor. Right. And are you making that argument with respect to all of the counts, including seven through nine, which are the counts for presenting false claims to the government? Your Honor, I think the, the argument with regards to counts seven through nine is more difficult. Okay. I think, and I, and I can see that. I'm sorry, I really just want to clarify that you are not I do want to, sorry. I do want to point out that the, the defendant has the burden of They have the burden of, of establishing it. And they have not done that to this court. All they have said is that the government conceded it below or, and, or that the district court found it below. And both of those are incorrect. And certainly the former is incorrect. If you look at the pages that they cite for first, the brief that we filed and the pages that they cite, the government was quite clear in maintaining its position that they had not established this. And the district court, while the district court made comments challenging the government's attorney, those are not findings of the, of the district court. Those are not rulings. Those are just statements from the bench during oral argument. And the district court's actual ruling did not address this issue because it did not need to. I don't think that this court necessarily needs to either. But, but anyway, that's, that's the argument that So you think there's sort of a procedural failing with respect to seven through nine, but substantively they look pretty much like the same issues. Seven through nine are more difficult for us than the, the case, the, the ones under the, the major fraud and wire fraud. But since the district court only dealt with that fifth factor under field that ordinarily what we would do if we got to that point is we'd send it back for the district court to take it up in the first place. Well I think that's within the court's discretion if you got to that point. But again, for reasons that I've discussed, I don't think it's necessary to get to that point. Okay. Thank you, Mr. Smith. Thank you. Ms. Mondy. Thank you, Your Honor. I'd like to start off by talking about the identity of the issue since I think that's perhaps where we, where we left off with the government's questioning. And this goes to, I think, the question that, that Judge Diaz asked earlier about the identity of the issues. There are three elements for a False Claims Act case. It's first, you have to have false claims or statements. Second, you have to have scienter. And third, you have to have materiality. And all three of those elements had to be proven for, for there to be a successful verdict in the False Claims Act case. Similarly, all three of these elements were part of the requirements of each of the three charges that were brought on the criminal side. And where we can find that is in the joint appendix. But to even get to that argument, we would have to first conclude that the United States was a party. Your Honor, yes and no. We, we do argue that they were a party because of the unique relationship between the two, between the relator and the United States recognized. In fact, this Court has even stated that in a False Claims Act case that the, the relator, and they're required to even have an attorney to represent the government's interest, that the relator acts as a private attorney general for, for the government. And that case is in U.S. ex rel Milam versus University of Texas. But even so, as the government said, the Taylor versus Sturgill case applies to both issue preclusion and, and claim preclusion. And we think that that also is applicable. But I did want to address, so we think that we have, that we have satisfied that part of the requirement for issue preclusion to apply. And, and, and again, Eisenstein was limited. For issue preclusion to apply to a non-party. Your Honor, we believe, yes, we believe that even, even issue preclusion can apply to a non-party in certain situations, and that is present here. And again, in Eisenstein, the Court really recognized that preclusion can apply, whether the government intervenes or not. But nevertheless, in that case, the Court did carefully circumscribe its holding to be that the, that the, the government is not a party for purposes of Federal Rule of Appellate Procedure 4A. That's what brought the case to the Supreme Court. Correct. The language in Eisenstein seems to be somewhat broader than you're given the credit for. Well, Your Honor, several times in the opinion, the Court limits its holding to that particular issue. And in fact, I think we've briefed the issue that in fact the government basically asked the United States, asked the United States Supreme Court not to make a broader holding. And so, in fact, the Court did exactly what the, what the government had asked in that case. But in order, let me switch quickly because I do want to cover the identity of the issues. All three of the elements of the False Claims Act case were part of the elements in the criminal case. And we can find that on pages 2671, which is for the major fraud counts, and on page 2678 for the wire fraud, and on page 2683 for the fraudulent claims count and, in fact, the government agreed below that on the wire fraud, falsity and materiality are elements of wire fraud. And we know that those are elements of the False Claims Act case. And that concession was made at Joint Appendix 309 to 310. I thought some of the, am I mixing up my counts? I thought some of the wire fraud counts relied on emails, not on sort of the false invoices. They did, Your Honor, but they still had to prove that they were false, that there was fraud or falsity in connection with that. And so, that's the... It has to be entirely, it has to be a complete identity. We're not talking about a claim for payment. We're talking about making a false statement with respect to some of these items that were being purchased. Correct, Your Honor, but the government conceded that falsity and materiality were requirements for wire fraud. And that's at page 309 and 310 of the Joint Appendix. But it was a different document that was false. I don't understand that. I don't see how a claim that an invoice was not false would preclude, under issue preclusion principles, would preclude going forward with a claim that a different document is false. I mean, yeah, they're both falsity claims, but they're different documents. I think that's right, Your Honor, but it was part of the fraudulent scheme itself. It was still the fraudulent or false statements that were made to the government that induced the government to pay the money. That is the fundamental aspect, and those were identical in both proceedings. If there are no further questions, we'd ask that the conviction be reversed. All right, thank you very much. We'll come down to Greek Council and then move on to our last case.
judges: G. Steven Agee, Albert Diaz, Pamela A. Harris